Good morning. We have one case before us this morning on Zoom and it is 23-6136 Council for Appellant. If you would make your appearance and you can you feel free to proceed. Thank you, Your Honor. This is Samuel Hodges on behalf of Plaintiff Appellant Tyler Herman. May it please the Court and Chief Judge Holmes and Judges Rossman and Ebel, Plaintiff would respectfully reserve three minutes for rebuttal. A gun is not supposed to discharge when secured in its holster without the user touching the trigger, but the P-320 does time and time again. And this is happening to responsible, safety-minded gun owners and law enforcement personnel across the country. And it happened to my client on February 2nd of 2018 at approximately 7 a.m. Tyler Herman's P-320 discharged into his leg without his touching the trigger. Plaintiff retained two experts to identify the defects in the P-320 and the cause of Mr. Herman's unintended discharge. Mr. Ross, if I may interrupt you, let me understand one thing in terms of the contours of your argument. There was an argument made regarding Mr. Herman's testimony about being taught to put a safety on as a child. And that was offered to establish or support the notion that as it relates to a manual thumb safety, if there had been one on the weapon, he would have used it. Well, Six Hour alleges that you waived that argument. In other words, that you forfeited that argument by not presenting it below and that you don't argue for plain error above here. You did not respond to that contention in your reply brief. Why have you not, by virtue of failing to respond, waived it anyway? Your Honor, it's part of the factual record that our experts rely upon. And so, we didn't waive that argument when our experts relied upon and reviewed the testimony of Tyler Herman and can certainly rely upon his testimony that he knows that you should always have a safety on. And the only time you should take the safety off is when you're ready to fire the gun. If you're saying that that fact appears in the record, in terms of appears it was a matter that was available to your expert, that is different than you arguing it and advancing it as part of your theory for why having the absence of the thumb safety would have caused this injury. That's a different thing. I mean, you need to make the argument. So, my first question is, did you make such an argument before the district court? I'll stop there. Did you make such an argument before the district court? I don't believe it appeared in our papers, Your Honor. Okay. And if you didn't make that argument before the district court and you haven't claimed plain error on appeal and you haven't responded to the argument of waiver that was made by Sauer, I'm hard-pressed to understand why that isn't something that we should view as waived now. Well, Your Honor, if our experts relied upon it and it assisted them in forming their opinion that a thumb safety would have prevented this discharge, let's assume for a second that that argument is waived. Okay. That doesn't change the fact that our experts concluded that a thumb safety would have prevented this discharge and that there's evidence on the record that supports their conclusion. Go ahead. I'm sorry, Judge Ross. You go ahead, Chief. Where is this evidence? I mean, that's the point. I mean, if that particular contention is waived, where is that evidence that would support the notion that Mr. Herman would have used the thumb safety? What are you talking about? It's in his deposition transcript. What evidence are you alluding to specifically? You don't have to give me page numbers. Just tell me what facts are you talking about? The fact that Mr. Herman testified at his deposition that he was taught by his grandfather about gun safety, that he was raised with guns, that he'd shot guns at a young child, he's aware of gun safety, and that his grandfather taught him that he should never take a safety off unless he's ready to fire the gun. Okay. I understand your point. So just to restate, your point is whether you made an argument specifically on that point before the district court, Mr. Herman testified about that point in his deposition. That's your position, right? Yes, Your Honor. Okay. Thank you. But as I understand the two experts, they don't refer in their opinions, do they? At least, I don't recall that they did refer specifically to that testimony about the grandfather's safety advice. They do not, Your Honor. And so they're really not stating that they rely on that other than just the generic problem that we rely on the record. But we've often said that courts are not required to seek through a record to see what people do or don't rely upon, or what lawyers do or don't rely upon. I mean, if it was sufficient to say that, the expert could simply say, I rely on the record and all the facts presented, and the law as it generally exists. Therefore, my opinion is the following. And we would then be put to both a factual and the job of being a factual assistant and a legal assistant for the appellant. Your Honor, this all goes to the point that Sig Sauer claims, which is there's no evidence that Tyler Herman would have used a thumb safety had it been equipped on the gun. And there is evidence to that point. And not only Tyler Herman's testimony, but just common sense. If the gun is sold with a thumb safety, which every military P-320 has. So every gun that the U.S. military has that is a P-320 has a thumb safety. And the P-320 is sold to the general public in a less safe way than it's sold to the most trained. But that just goes to whether it is a defective product or not. You have two things you have to for your case. One, it's a defective product. And it seems to me that was mostly what your two experts really were addressing. And then you have a separate element. Did that defect, in fact, cause this accident? And I just don't see that the experts addressed that in any particular way or specific way. Well, I agree, Your Honor, that the experts, both experts, I think it's fair to say, spend significantly greater portion of their expert reports on design defect. But there is ample support for their causation opinion. Specifically, Mr. Tertin conducted experiments and analysis on which he based his causation opinion. So his experiments consisted of the following. First, he did an experiment that confirmed that the gun was a single action gun, meaning that pulling the trigger does nothing but release the striker. He next conducted an experiment to determine the trigger travel distance, meaning the distance the has to go for the gun to fire and compared that against a similar gun, a Glock 19 pistol. And he confirmed that the P320's trigger needs to travel one quarter as long, one fourth as long as a Glock pistol. So here you have a gun that is precocked and the trigger needs to travel an exceedingly short distance. And third. So here you have a gun that is arguably design defective. Correct, Your Honor. But you got to do more than that. And Your Honor, I don't disagree. But where the district court erred was they didn't consider the other evidence that our experts relied upon. You didn't point any other evidence out to the court. How many days was this trial? I'm sorry, how many days? How long was the trial? How many days long was it? There was no trial, I believe. I'm sorry, Your Honor, of course there was. This was on summary judgment, of course. Okay, go ahead. But it was, I would say it was estimated to be approximately a week. But regarding the evidence that the district court did not consider, two critical pieces, one of which are videos of unintended discharges that occurred exactly as did. Meaning there is a video from 2006 police body camera video where he's getting out of his car, his hands are visible, and his gun discharges. There's a video in Honesdale, Pennsylvania, where a police officer gets out of his car, both his hands are visible, they're not touching the gun, the gun is holstered, and it discharges in its holster. That same incident occurred in Houston, Texas. Same thing. Your Honor, I reviewed Your Honor's opinion in Roe v. FCA. In that case, the district court excluded two experts because they didn't sufficiently show that a gear shifter could not self-engage into reverse. In this case, we have evidence, video evidence, that shows the can and does discharge in its holster without the user touching the gun. Mr. Haas, what is highlighted though by your argument in your response to Judge Ebel is exactly the problem that he is underscored, which is everything you're saying relates to whether this is a defective gun. It doesn't relate to whether that defect caused this specific injury. And when you were talking about Mr. Turteen's expert opinion, you were talking about things that were characteristics of the gun, not whether there was a linkage between that characteristic and this injury. Did he opine or have a theory about how this gun discharged in this case? Yes, Your Honor, and the theory is that the gun discharged because of unintended trigger actuation. There's only three ways a gun can discharge. One, it's dropped. Two, it's inadvertently contacted by a finger. And three, by a foreign object. Yes. Thank you. I'd like to ask you a specific question about the Rule 702 standard. How do you satisfy the Rule 702 standard here when the testimony of your experts has to relate to the facts of this case? I mean, it seems that you are suggesting the district court erred here because it didn't consider the other evidence that your experts relied upon. But isn't what's missing a connection between the facts of this case and the principles and methods that you contend support the causation opinion? Your Honor, respectfully, I don't believe that that's missing. I believe that they could have expounded upon it more. But those issues, according, you know, go to weight, not to admissibility. We have a similar discharge here as to eight other incidents that we have on video. And our experts identified what makes this gun uniquely susceptible to unintended discharge, what makes it more dangerous than any other gun. I respectfully reserve the remaining two minutes and 30 seconds for rebuttal. All right. Ms. Anderson, we'll hear from you now. Okay. Thank you, Your Honors. May it please the court. An expert cannot reliably, reliably opine on the cause of an accident if they have not looked at circumstances of the accident. In the underlying briefing that the district court looked at on the Dawbert motions and the summary judgment motion, appellant argued that their first expert, Mr. Tertin, was going to testify simply on defect and that Dr. Vigilante would testify on causation. And I think as has been reflected so far in the argument this morning, it's clear that Mr. Tertin did not talk about the circumstances of the accident and in fact said he did not care about what happened. Did he say, did the counsel for Herman say that Tertin was only testifying about defect and Vigilante was testifying about causation or did they offer both experts for for multiple reasons but at least both of them for causation? It was in their response to the summary judgment motion in the underlying court that they made the argument that first that Mr. Tertin was going to talk about the defect and that and then they said after Mr. Tertin testifies about the P-320's design defects, plaintiffs will call Dr. Vigilante to testify that those design defects caused plaintiff's unintended discharge. So that was on page 18 of their response to the summary judgment motion. All right so there the plaintiff was actually representing that the only causation expert they were offering was Vigilante. Would you say that's correct? I would say that's correct based on the argument in the underlying briefing. I you know Mr. Tertin certainly offered some opinions about causation in his report but in the in the briefing and the underlying argument to the court it seemed as though plaintiff's appellants were conceding the fact that Mr. Tertin his opinions really related to design defect but even going beyond that to go to causation we specifically asked him in his deposition does it matter to you the facts of the accident and he said no and when asked multiple times what the basis of his opinion was as to whether the lack of a tab trigger would have caused this accident he said it was common sense and then when further pressed just said you have to have some sort of manual safety on a single action gun and that was the entirety of the the basis for him saying that there should be you know that that there was a defect here was simply it's a single action gun it needs to have an external safety and it's common sense that an external safety will prevent an accidental discharge and because it was an accidental discharge therefore the lack of these external safeties caused the accident it's a very circular and and general causation opinion that is divorced entirely from the facts of the of the actual case now Mr. Tertin is the only one who even looked at the subject pistol so now let's talk about the evidence in this case you had the pistol and you had a holster neither expert looked at the holster neither expert looked at any evidence beyond or relied upon or considered evidence beyond Mr. Herman's own testimony and even as to Mr. Herman's own testimony they couldn't relay in deposition when asked which portions of that testimony they even relied upon so to say that Mr. Herman testified to certain things and therefore the experts could have relied upon it does not mean they did rely upon it and in fact you know we would posit that at that deposition that's the time when the expert is supposed to state the bases for their opinions and if they're not stating portions of the factual evidence in the case that they relied upon how is the district court supposed to otherwise determine or guess as to what else they may relied upon beyond that which they testified to so you know there really just was absolutely no evidence that there was that for the district court to look at to say that either one of these experts looked at causation specific causation as to what happened here and Dr. Vigilante who was the expert that plaintiffs indicated would testify as to causation did not look at the pistol and in fact the only pictures he even looked at of the subject pistol were two exterior photographs of the of the picture that he got from Mr. Tertin and put in his report but when asked at deposition did you look at any other pictures he said no he didn't when asked if in his deposition if there was anything in the record that would support that Mr. Herman would have engaged Emanuel's safety he said I don't know I don't recall or I don't recall what was there that's his time to tell us what he relied upon clearly he did not rely upon anything in the underlying record to say that Mr. Herman would have engaged Emanuel's safety Mr. Herman had every opportunity to provide that information in the record if he wasn't going to say it in his deposition there could have been an affidavit there could have been something provided in the underlying record for the district court that would have indicated that he would have engaged Emanuel's safety if one had been there but he didn't and so there was no evidence in the underlying record for the court to make that determination and then when it came to the tabbed trigger let's just start with everybody agrees all of the experts agreed that the trigger was pulled and a gun is desired is designed to discharge when the trigger is pulled and for plaintiffs to assert that a blade in a trigger will prevent a discharge under certain circumstances you certainly need to at least try to investigate the circumstances of what caused the trigger to be pulled in this case and it's the plaintiff's experts the appellant's experts complete failure to even try to investigate the underlying circumstances of this case to determine where the trigger was pulled how the trigger was pulled what had an opportunity to pull the trigger to look at the holster which had evidence of of the location of the gun in relation to where the trigger was to the spent casing found on the bed there was a lot of evidence the experts could have looked at and made that fact-specific investigation to support their opinions and they didn't do it they chose not to and so as a result their opinions were completely unreliable and this opinion in particular came down in September 2023 this year the standards even stricter um this this uh this uh you mean the district court's opinion the district court's okay okay came down before the amendments to the rule and the amendments to the rule made it very clear early this year that um that the the standard should be strict this is not a question of uh you know if there's if there's any question on the underlying methodology that it needs to go to a jury as as a fact finder the amendment said no the the the non-movement has the burden of showing by a preponderance of the evidence that the data relied upon is reliable that the information fits the case and how experts to go in go ahead so your position that um that oklahoma law has a general requirement that that expert testimony is needed for causation in this kind of case in other words that without uh as a matter of law that you can't satisfy your burden um under oklahoma law and causation without expert evidence yes and we've cited testimony to that now there are limited circumstances where you would need expert testimony and that's if a lay person um if it wasn't a complicated issue but generally when it's a product liability case the law in oklahoma is that you need expert testimony and the courts have the oklahoma courts have repeatedly uh granted summary judgment to manufacturers when their experts have been precluded let me try to get clarification on that uh you the the question uh was whether oklahoma law requires an expert and you said well there's repeated cases where they found that it was necessary making it sound like it's more of a factual case and that they usually tend to require but does oklahoma have a per se uh blanket rule that that on product liability cases you have to have an expert on causation or is that a case-by-case decision in oklahoma law under oklahoma law it is not quite a per se requirement it is a general rule that you need to have expert testimony on causation on the facts cases that have come before oklahoma courts they have generally said that you have to have an expert yes they have said you they have said expert testimony is required because uh the the product um needs to have the expert to to tell the jury to give the jury the facts on which to to opine and here in particular while the um you know we anticipate that uh that the plaintiff appellant will say that this was simple you don't need it for causation you don't need an expert for causation because a you know a manual if properly engaged would prevent a discharge um and that the uh tab trigger could would probably uh prevent a discharge that's what the the plaintiff's expert said however um that opinion is reliant upon the internal functioning of the pistol and in fact it's been plaintiff's expert's position that the ordinary consumer wouldn't understand those wouldn't understand and looking at this pistol that it is a single action pistol didn't the district court say that expert testimony may not be required on the on the specific question of whether an engaged manual thumb safety would have prevented the the accident here i mean i thought the district court said and you acknowledged in your brief that you the jury would not need expert testimony on that point that a properly engaged manual safety no not on that point on causation on defect for sure but not on causation so so why can't that portion uh why can't that go to the jury if you if you agree in the district court found that a jury would not need an expert to to speak to uh that particular manual thumb safety issue um why can't it go to the jury without expert testimony uh on that question on the causation on the specific causation on the record and the court correctly uh stated that there was no evidence on the record on which a jury could infer even taking all of the inferences in favor of the plaintiff that were in the record on the arguments what about his deposition testimony about his understanding about gun safety as a as a child that you always put the safety on and why can't that why can't we draw a reasonable inference or at least that why can't that deposition testimony permit the inference uh the deposition testimony can't permit the inference because one it's been you know it's been waived because it wasn't relied upon in the underlying arguments and so it was it was waived nobody ever brought that up um and so you can't just have that inference well let's assume let's assume for a minute that it wasn't waived or that we're not gonna excuse we'll excuse the waiver or something let's just assume why doesn't that testimony in and of itself permit the inference that testimony in and of itself doesn't permit the inference as the underlying court stated because they're um the as the court stated it came out as an equal inference because the plaintiff also had options to purchase a new he had options to purchase a manual safety he didn't want a manual safety he wasn't looking to get a manual safety so what the court ended up finding was the inferences came out to equal it didn't tip the scales to show that there was a evidence that uh that plaintiff would have had a manual safety engaged and therefore that would have prevented the incident here and and and miss denison let me be clear on one point you you you're you're not conceding uh well i mean you weren't conceding the issue that was uh just being discussed as it relates to causation right that it was common sense that that the absence of of a man that you needed to have a manual safety in the absence of manual safety would cause the to go off right correct correct um so you know we're not so that you know we still posit that there's no need for the manual safety and there's definitely you need expert testimony to say that there was the original defect and that not having a manual safety is a defect you absolutely need expert testimony to say that emmanuel say that the lack of emmanuel safety is a defect here and then you also need to have the testimony that the lack of emmanuel safety caused the unintentional discharge that i get that but but judge rossman alluded to earlier some reference to you in your briefing you accepting as a matter of common sense that the that the absence of emmanuel safety would allow for the gun to go off right oh no we're not conceding that no let me let me be very clear the gun had the trigger pulled that's what caused the gun to go off what we agree is that a properly functioning manual safety that was engaged would prevent a trigger pull that's just i mean that's how it works but we are not conceding that this gun that there was a defect in this gun because it did not have a manual safety that requires expert testimony and more to the point you aren't conceding as a matter of any issue related to the causation associated with the manual safety right correct correct there is absolutely no evidence that emmanuel safety would have been engaged here and there's nothing that a reasonable fact finder could use to conclude that emmanuel safety would have been engaged in this case and the plaintiff's experts didn't do any of that work so uh there's just simply nothing in the record in the underlying record to show that a tab trigger or manual safety would have prevented this incident and the court properly exercised its discretion thank you very much your honors thank you counsel uh mr haas thank you even if the court this court agrees with the district court and excludes plaintiff's experts causation the district court did not exclude their design defect opinions summary judgment was improperly granted in favor of six hour because as six hour just conceded there's no expert testimony that is needed for causation as it relates to the thumb safety people can use their common sense and jurors can know that if the thumb safety is actively engaged it would have prevented this unintended discharge but that if is the critical question and so the issue then so if we have if we're absolutely agnostic on the record whether it was properly engaged or not i don't see how uh how you can come up with uh more than you know probable more than 50 percent and you're right your honor if there was no testimony about it um then it's fair to say the record is agnostic but there is testimony about it there's testimony in the record that uh mr herman knew because he grew up with guns he shot his grandfather's 22 rifle and pistol and his grandfather taught him that you should always engage a manual safety until you're ready to fire and there's no evidence in the record that in any way suggests that he would not have activated a manual safety if it was featured on the gun and well it wasn't featured on the gun because he didn't buy a gun with the that six hour made a weapon with a manual safety and he chose not to buy it so i mean when you know he had his grandfather's advice but when push came to shove he didn't buy that weapon but your honor it should have never been offered on the market that that goes to that goes to the defect issue that does not go to what he would have done with the gun if he had it and the in the critical decision is did he really want a manual safety with from which we could infer that if he had manual safety along with his grandfather's advice he would have used it but we don't have that right but we do have design defect opinions that are admissible that say this gun should never be offered to the public because it is unsafe based upon its short trigger travel distance its single action design and its lack of any manual safety if sig wants to offer this gun they need to offer to the public the same way they offer it to the military which is every single gun has a manual safety and those opinions the court did not strike but the the problem is ross is that we go back to what you're colloquy with judge ebell i mean design defect is not enough you got to show causation and if you don't have anything on that then the rest becomes irrelevant i see that i'm out of time you can respond if you have a short response to that please go ahead your honor with respect to causation the causation related to whether or not the gun whether or not a thumb safety would have prevented this incident can be decided by a jury without expert testimony and for that reason even if the experts opinions as to causation are stricken the court uh the jury can still decide this case based upon common sense causation determination all right any further questions from my colleagues no all right then thank you very much for your fine arguments counsel case is submitted if you'll exit please